# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

JEFFREY CURTIS GHOLSON,

        Petitioner,

  v.

VICTOR FLOURNOY,

        Respondent.

CIVIL ACTION NO.: 2:17-cv-47

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Jeffrey Gholson ("Gholson"), who is housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 12), and Gholson filed a Reply, (doc. 14). Gholson also filed a Motion for Judgment on the Pleadings, or in the alternative, a Motion for Hearing and Motion for Appointment of Counsel. (Doc. 15.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Gholson's Petition due to his failure to exhaust his available administrative remedies prior to filing this Petition and **DISMISS as moot** all pending Motions. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Gholson leave to proceed *in forma pauperis*.

Alternatively, as explained below, if the Court finds that Gholson has exhausted his available administrative remedies and reaches the merits of his Petition, the Court should **DENY** the overwhelming majority of Gholson's arguments. Gholson essentially seeks credit toward his federal sentence for over twenty-three (23) years of detention he spent incarcerated in state

institutions. Because Gholson served that time before his federal sentence commenced and nearly all of that time was unquestionably credited toward his state sentences, Gholson cannot receive federal credit for those years of incarceration. Additionally, the Federal Bureau of Prisons ("BOP") did not abuse its discretion when it denied Gholson's request to have his state facility of incarceration designated as the place where his federal sentence would be served. However, as explained below, the record is not clear if six (6) days of Gholson's prior custody was credited toward his state sentence.[1] Thus, should the Court reach the merits of Gholson's Petition, it will need to receive additional briefing to resolve his claims as to those six (6) days.

## BACKGROUND

On February 4, 1993, Gholson was convicted in the United States District Court for the Middle District of Florida of bank robbery. (Doc. 12-1, pp. 11–15.) The Middle District of Florida sentenced Gholson to 188 months' imprisonment. (Id.) As explained in more detail below, subsequent to his federal sentencing, Gholson was returned to the custody of the State of Florida to answer pending state charges. (Id. at p. 2.) The state court imposed sentences totaling thirty-two (32) years of incarceration. (Id. at p. 72.) Gholson served those sentences in state facilities and entered federal custody on November 10, 2016, when he was paroled from his Florida state sentences. (Doc. 12, p. 2.) The BOP calculates his projected release date as July 3, 2030, via good conduct time release. (Doc. 12-1, p. 2.)

In his Petition, Gholson contends that the BOP has miscalculated his sentence. (Doc. 1.) Specifically, he contends that his federal sentence should have commenced either when he was arrested on August 3, 1992, or when he was sentenced in the Middle District of Florida on February 4, 1993. (Id.) Gholson also contends that the BOP has improperly denied him credit

---

[1] Given this ambiguity and potential error, I **ORDER** Respondent's counsel to provide a copy of this Report and Recommendation to the Section Chief for Sentence Computations at BOP's Designation and Sentence Computation Center.

toward his federal sentence for the time spent in local and state facilities prior to November 10, 2016. Additionally, he alleges the BOP wrongly denied his request to designate his State of Florida facility for the service of his federal sentence, which would have allowed his federal and state sentences to run concurrently.

Respondent contends Gholson has received all of the credit against his federal sentence to which he is entitled. (Doc. 12, pp. 7–9.) Respondent posits that 18 U.S.C. § 3585(b) and BOP Program Statement 5880.28, Sentence Computation Manual (CCA of 1984), prohibit the application of the requested prior custody credit Gholson seeks because the time at issue was already applied toward the service of his state sentences. (Id. at p. 12.) Respondent also maintains that the BOP properly computed Petitioner's federal sentence to run consecutively to his state sentence and that the BOP properly reviewed and denied, in the exercise of its discretion, Gholson's request for a *nunc pro tunc* designation. (Id. at pp. 9–12.) Finally, Respondent maintains that Gholson failed to exhaust his available administrative remedies before bringing this Petition.

## DISCUSSION

## I.     Whether Gholson Exhausted his Administrative Remedies

### A.     Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the

exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).[2]

The United States Supreme Court has noted exhaustion must be "proper." <u>Id.</u> at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90–91. In other words, an institution's requirements define what is considered exhaustion. <u>Jones</u>, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. <u>Id.</u>

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1157 (11th Cir. 2005)); <u>Sewell v. Ramsey</u>, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

---

[2] Although <u>Woodford</u> was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." <u>Fulgengio v. Wells</u>, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting <u>Woodford</u>, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

**B.      Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. <u>Bryant</u>, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. <u>Id.</u> In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." <u>Id.</u> at 1376.

In <u>Turner v. Burnside</u>, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. <u>Id.</u> at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. <u>Id.</u> However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. <u>Id.</u> Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" <u>Id.</u> "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." <u>Id.</u> at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. <u>See Bryant</u>, 530 F.3d at 1376–77.

## C.  Analysis of Gholson's Efforts at Exhaustion

Inmates at FCI Jesup may grieve disputes through the BOP's multi-level administrative remedy procedure. This procedure is codified in 28 C.F.R. §542.10, *et seq.*, and provides for the formal review of any complaint which relates to any aspect of the inmate's confinement, including disputes of sentence computations. (Doc. 12-1, p. 6.) This procedure generally commences with an attempt at informal resolution at the local level, which, if unsuccessful, is followed by filing a formal complaint with the Warden using a BP-9 form. (Id.) An inmate may appeal the Warden's response to the inmate's complaint by filing a BP-10 form with the Regional Director. (Id.) If the Regional Director denies the appeal, the inmate may then file a final appeal with the Office of General Counsel in Washington, D.C., by submitting a BP-11 form. (Id.); 28 C.F.R. § 542.15. An inmate must appeal through all three levels of the process to exhaust his administrative remedies.

The evidence before the Court establishes that, though Gholson pursued some administrative remedies related to the allegations raised in his Petition, he did not exhaust all available remedies. (Doc. 12-1, pp. 6, 114–15.) He filed two grievances with the warden at FCI Jesup and two appeals with the Southeast Regional Office. (Id.) However, he did not appeal any of these filings to the Office of the General Counsel, the final step in the BOP's administrative remedy procedure. (Id.) Gholson's claims concern BOP-related matters, which must be appealed through the above-described process, and Gholson failed to do so. To achieve exhaustion, Gholson cannot merely take only the initial steps in the administrative process; he must pursue all available remedies, including a final appeal. See Bryant v. Rich, 530 F.3d at 1378. Additionally, based on Respondent's submissions, it appears that the BOP's

administrative remedies were available to Gholson, and he has raised no contentions to the contrary.

In his Reply, Gholson does not deny that he failed to pursue the BOP's administrative remedies or argue that those remedies were unavailable to him. To the contrary, he admits that he "has not exhausted his administrative remedies in this case, because Petitioner is suffering irreparable harm from each day of his continued illegal incarceration." (Doc. 14, p. 5.) However, faced with similar arguments, the United States Supreme Court rejected any "special circumstances" exception to exhaustion requirements. Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856–58 (June 6, 2016).

Thus, even accepting Gholson's account as true, under the first Turner step, he failed to exhaust the prison's available administrative remedies prior to filing his Petition. Moreover, if the Court were to proceed to the second Turner step, the Court finds that Respondent's account of Gholson's exhaustion to be reliable and accurate. Ms. Kneyse Martin's affidavit and supporting materials reveal that administrative processes were available to Gholson to raise the claims regarding his sentence calculation, but he failed to fully pursue those remedies.

Gholson failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS without prejudice** Gholson's Petition.

## II.     Merits of Gholson's Claims

The Court need not address the merits of Gholson's claims due to his failure to exhaust his available administrative remedies. However, if the Court does reach the substance of his arguments, it should deny the overwhelming majority of Gholson's Petition for the following reasons. The only potentially viable claim Gholson makes is his entitlement to six (6) days'

credit for custody served prior to the commencement of his federal sentence. To resolve this claim, the Court would need additional briefing and perhaps evidence from the parties.

## A. Whether the BOP Miscalculated Gholson's Sentence

It is the duty of the United States Attorney General, acting through the BOP, to determine the date a defendant's sentence commenced and the amount of credit due for the time served by the defendant prior to that commencement. United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). "A federal district court reviews for abuse of discretion the BOP's decision under [18 U.S.C.] § 3585 regarding commencement of a federal sentence and the grant of credit for prior custody." Paradis v. Keller, No. 1:10-CV-2354-TWT-AJB, 2011 WL 2790480, at *4 (N.D. Ga. June 13, 2011), *report and recommendation adopted*, 2011 WL 2790472 (N.D. Ga. July 14, 2011). To determine whether the BOP properly calculated Gholson's sentence, the Court must begin with the plain language of the statute itself. Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."). For sentences imposed under the Sentencing Reform Act of 1984, Section 3585 controls questions of sentence commencement and credits for prior custody. This statute provides:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit of Prior Custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences —

(1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585 (emphasis added).

The following facts regarding Gholson's criminal history make the computation of his sentence less straightforward than most petitioners:

- On August 3, 1992, State of Florida authorities arrested Gholson. (Doc. 12-1, p. 2.)

- On August 7, 1992, the United States Marshals Service removed Gholson from Florida state custody on a federal writ of habeas corpus *ad prosequendum*. (Id.)

- On February 4, 1993, the United States District Court for the Middle District of Florida ("District Court") sentenced Gholson in Case Number 92-251-CR-T-23C to 188 months' confinement for bank robbery, in violation of 18 U.S.C. § 2113(a)(d). (Id. at pp. 2, 11–15.) The District Court did not specify whether this federal sentence was to be served concurrently with or consecutively to any other sentence. (Id.)

- Gholson was returned to Florida state custody on February 5, 1993. (Id. at p. 2.)

- On May 24, 1993, the Circuit Court of Hillsborough County, Florida, sentenced Gholson to a thirty-year term of confinement for felony uttering forgery, petit theft, grand theft, kidnapping, and robbery in Case Number 92-10179. (Id. at pp. 2, 17–58, 72.)[3]

- On March 4, 1997, the Circuit Court of Jackson County, Florida, sentenced Gholson in Case Number 97-0097 to a two-year term of confinement for battery of a law

---

[3]  The Hillsborough County Circuit Court also sentenced Gholson to a total term of imprisonment of twenty-five (25) years in five other cases, but those sentences ran concurrently with his sentence in Case Number 92-10179. (Doc. 12-1, p. 71.) Thus, these sentences had no effect on his aggregate state term of imprisonment.

enforcement officer. (Id. at pp. 2, 64–65, 72.) This term ran consecutively to his sentence in Case Number 92-10179. (Id.)

- On May 1, 2007, Gholson was sentenced in the Circuit Court of Gulf County, Florida, in Case Number 03-120, to a five-year term of confinement, concurrent to any active sentence, for battery of a law enforcement officer. (Id. at pp. 2, 67–69.)

- Gholson received a combined total term of thirty-two (32) years' confinement from Florida state courts. (Id. at pp. 2, 71–73.) The Florida Department of Corrections gave Gholson credit toward his state sentences for 288 days of time he spent in jail between his arrest on August 3, 1992, and prior to the imposition of his state sentence on May 24, 1993. (Id. at pp. 71–72.)

- On November 10, 2016, Gholson was paroled from his state sentences and was transferred to federal custody to commence serving his 188-month sentence from the Middle District of Florida. (Id. at pp. 3, 75.)

### 1. Whether the BOP Abused its Discretion in Calculating the Commencement of Gholson's Federal Sentence

In determining the proper credit, the Court must first determine when Gholson's sentence commenced. A sentence "'cannot begin prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). Gholson's federal sentence "commence[d] on the date [Gholson was] received in custody awaiting transportation to, or arrive[d] voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). On November 10, 2016, Gholson entered federal custody to commence serving his 188-month sentence from the Middle District of Florida. (Id. at pp. 3, 75.) Thus, his federal sentence began on that date.

In his pleadings, Gholson emphasizes that, though he was arrested by state authorities on August 3, 1992, federal authorities were present at his arrest, and he was soon transferred to federal custody to answer for his federal bank robbery charges in the Middle District of Florida. (Docs. 1, 14.) Thus, he appears to contend that his federal sentence should have commenced on the date of his arrest because he was in federal custody. (Id.) Alternatively, he argues that his federal sentence commenced on the date the Middle District of Florida pronounced sentence, February 4, 1993. (Id.) However, Gholson's lines of reasoning ignore the plain language of Section 3585(a). On August 3, 1992, and February 4, 1993, Gholson was not "received in custody awaiting transportation to" the official detention facility where his federal sentence was to be served, and he did not "arrive voluntarily to commence service of sentence" at the facility where that sentence was to be served. Rather, on February 5, 1993, he was transferred back to a local facility to answer his state charges. (Doc. 12-1, p. 2.)

Moreover, while Gholson was in federal custody from August 7, 1992, to February 4, 1993, that custody was only secondary custody pursuant to a writ of habeas corpus *ad prosequendum*. "'[I]if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.'" Powell v. Jordan, 159 F. App'x 97, 99–100 (11th Cir. 2005) (quoting Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980)). "A writ of habeas corpus *ad prosequendum* is only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." Civiletti, 621 F.2d at 693.

Gholson also argues that the BOP miscalculated the commencement date of his federal sentence because the state sentence and federal sentence should have run concurrently, not

consecutively. "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." United States v. Ballard, 6 F.3d 1502, 1505 (11th Cir. 1993); see also 18 U.S.C. § 3584(a). It appears that the Circuit Court of Hillsborough County ordered Gholson's sentence in Case Number 92-10179 to run concurrently with his federal sentence. (Doc. 12-1, p. 71.) However, the authority to order a federal sentence to run concurrently with or consecutively to any other sentence rests solely with the federal sentencing court. See United States v. Andrews, 330 F.3d 1305, 1307 n.1 (11th Cir. 2003); Finch v. Vaughn, 67 F.3d 909 (11th Cir. 1995) ("We specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence.") (citing United States v. Adair, 826 F.2d 1040, 1041 (11th Cir. 1987)). Thus, only the Middle District of Florida could have ordered that Gholson's federal sentence run concurrently with the service of his state sentence. This is true even though Gholson's state sentences had not yet been imposed. The United States Supreme Court has held that a district court has authority to order that a federal sentence be consecutive to an anticipated state sentence that has not yet been entered. Setser v. United States, 566 U.S. 231 (2012).[4]

Because the Middle District of Florida did not order Gholson's federal sentence to run concurrently with his state sentence, the sentences must run consecutively. Ballard, 6 F.3d at 1505 ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); see also 18 U.S.C. § 3584(a). Gholson remained in state custody until he was transferred to federal custody on November 10, 2016,

---

[4] Even before Sester, the United States Court of Appeals for the Eleventh Circuit, while recognizing a split of opinions from other Circuits, held that a federal court has the authority to impose a consecutive sentence to an unimposed, future state sentence. Andrews, 330 F.3d at 1307 (citing Ballard, 6 F.3d at 1502).

which is the date was he received in custody awaiting transportation to the official detention facility where his federal sentence would be served. Therefore, his state sentence was served while he was in state custody, and the Florida state court's order has no influence over the operation of Gholson's federal sentence.

The BOP committed no error, much less abused its discretion, when determining that Gholson's federal sentence commenced on November 10, 2016. Thus, should the Court reach the merits of Gholson's arguments, it should **DENY** this portion of his Petition.

2.     **Whether the BOP abused its Discretion in Denying Gholson Credit for Time Served Prior to Commencement of his Federal Sentence**

Section 3585(b) states that, in some circumstances, a defendant is entitled to credit for time served prior to sentence commencement unless that time has been credited against another sentence. However, a defendant can only receive such credit for time that "has not been credited against another sentence." 18 U.S.C. § 3585(b). As laid out above and detailed in documents attached to Respondent's brief, the Florida Department of Corrections credited the 8,571 days Gholson spent in custody from the date of his state sentencing to the date he was received in federal custody (May 24, 1993, to November 10, 2016) against his thirty-two (32) years of state sentences. (Doc. 12-1, p. 71–72.)[5] Thus, that time obviously cannot be credited toward his federal sentence under Section 3585(b). Gholson cannot receive credit against his federal sentence for these dates, because to do so would be to give him "double credit", which is prohibited by statute. Thus, should the Court reach the merits of Gholson's arguments, it should **DENY** this portion of his Petition.

---

[5] Gholson spent less than thirty-two (32) years in incarceration on his state sentences because he accrued an aggregate of 3,333 days of "gain-time" during his incarceration in state facilities. (Doc. 12-1, p. 72.) He actually accrued 4,406 days of gain-time, but he forfeited 1,073 of those days due to disciplinary actions. (Id.)

Less clear is whether Gholson should get credit toward his federal sentence for any of the time that he spent in custody before his state sentence was imposed. On this point, Respondent states, "the Florida Department of Corrections credited the 288 days Petitioner was in custody, between his August 3, 1992[,] arrest and his May 24, 1993[,] state sentencing in Hillsborough County[] toward his state sentence." (Doc. 12, p. 12.) Indeed, documents from the Florida Department of Corrections indicate that the state gave Gholson "288 days jail credit." (Doc. 12-1, p. 71.) Thus, the state credited 288 days, including dates that Gholson was in federal custody pursuant to the writ of habeas corpus *ad prosequendum*, toward Gholson's state sentences. Thus, he cannot receive credit toward his federal sentence for these 288 days. Again, should the Court reach the merits of Gholson's Petition, it should **DENY** the portion of his Petition seeking credit for these 288 days.

However, August 3, 1992, to May 24, 1993, spanned 294 days, not 288. Thus, assuming that the State of Florida did not credit the remaining six (6) days of custody toward any state sentence and that these days satisfy the language of Sections 3585(b)(1) or (2), Gholson may be entitled to have those six (6) days credited toward his federal sentence. However, should the Court reach the merits of Gholson's arguments, the Court would need additional documentation to make this determination. If the Court dismisses Gholson's Petition for his failure to exhaust his available administrative remedies, it appears that the BOP must take a closer look at a more fully established record to assess whether Gholson actually served six (6) days of detention without receiving credit toward any sentence prior to the commencement of his federal sentence. Gholson's administrative grievance process will provide the BOP with that opportunity.

**B.     Whether the BOP Abused its Discretion in Denying Gholson *Nunc Pro Tunc* Designation**

Gholson also argues that the BOP erred in determining he was not entitled to *nunc pro tunc* designation of his federal sentence to run concurrently with his state sentence.  As explained above, Gholson's federal sentence was silent as to whether it was to run consecutively to or concurrently with his state sentence, so his federal sentence was to run consecutively to his state sentence.

The BOP has the authority to designate the place of a prisoner's imprisonment. 18 U.S.C. § 3621(b).   In exercising that authority, the BOP may, in its "sound discretion" "designate a state prison as a place of federal confinement *nunc pro tunc*."  Roman v. Nash, 184 F. App'x 277, 279 (3d Cir. 2006) (citing Barden v. Keohane, 921 F. 2d 476, 481 (3d Cir. 1991)).  In other words, the BOP can designate the state prison where Gholson was detained on his Florida charges as the place of imprisonment for his federal sentence, thereby effectively allowing his state and federal sentences to run concurrently.   However, the BOP has broad discretion in making this determination, and a defendant is not legally entitled to *nunc pro tunc* designation.  Barden, 921 F.2d at 483.

BOP implements *nunc pro tunc* designations under Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence.  (Doc. 12-1, pp. 91–102.)  This Program Statement provides an inmate with the opportunity to request a *nunc pro tunc* designation based on an inmate's request for pre-sentence credit for time spent in service of a state sentence.  While the BOP must consider an inmate's request, the BOP has no obligation to grant the request "by designating a state institution retroactively as the place to serve the federal sentence."  (Id. at p. 96.)  The BOP will gather and review certain information, such as the federal and state judgments and commitments, the state sentence data record to include jail

credit, and "any other pertinent information" relating to the sentences. (Id.) Under BOP Program Statement 5160.05, the Regional Directors are delegated the authority to designate a non-federal facility for concurrent service of a federal sentence and may make such a designation "when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." (Id. at p. 91.)

The BOP reviewed Gholson's *nunc pro tunc* designation request under the factors set forth in Section 3621(b). (Id. at pp. 105–12.) Section 3621(b) provides, in pertinent part, as follows:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering:
>
> (1)    the resources of the facility contemplated;
>
> (2)    the nature and circumstances of the offense;
>
> (3)    the history and characteristics of the prisoner;
>
> (4)    any statement by the court that imposed the sentence –
>
> > (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > (B)    recommending a type of penal or correctional facility as appropriate; and
>
> (5)    any pertinent policy statement issued by the Sentence Commission pursuant to section 944(a)(2) of title 28.

18 U.S.C. § 3621(b).

On March 1, 2017, the BOP's Designation and Sentence Computation Center ("DSCC") reviewed Gholson's request that the BOP retroactively designate the Florida state institution

where he was incarcerated as the place he served his federal term of imprisonment. (Doc. 12-1, p. 105.) On May 22, 2017, the DSCC sent a letter to the Middle District of Florida soliciting the District Court's position as to retroactively designating the Florida state institution for the service of Gholson's federal sentence. (Id. at pp. 107–08.) On May 25, 2017, the Honorable Steven D. Merryday, Chief Judge of the Middle District of Florida, replied to the DSSC and stated that there was no material discussion of the federal and state sentences running concurrently at Gholson's federal sentencing. (Id. at p. 110.) Judge Merryday further noted that the state sentence arose from different facts than the federal sentence and that he saw "nothing, legal or factual entitling Jeffrey Gholson to concurrency." (Id.) However, Judge Merryday perceived no reason to oppose the retroactive designation, unless Gholson's conduct as an inmate suggested otherwise. (Id.)

Ultimately, the BOP denied Gholson's request for *nunc pro tunc* designation. (Id. at p. 112.) Gholson was informed of that denial by letter dated May 26, 2017. (Id.) In that letter, the BOP explained that *nunc pro tunc* designation was not appropriate for Gholson because: under factor (2) of Section 3621(b), his federal offense was bank robbery; under factor (3), his criminal history weighed against such designation; and under factor (4), the federal court had the opportunity to order that Gholson's federal sentence run concurrently with his state sentence but did not, and when contacted for a position on retroactive designation, the court acknowledged that the state and federal offenses arose from different facts, and the court saw nothing legally or factually entitling Gholson to concurrency.[6] (Id.) Gholson was further informed that Section 3585(b) prohibits credit toward his federal sentence for time spent in state custody. (Id.)

---

[6] Judge Merryday perceived no reason to oppose the retroactive designation, unless Gholson's conduct as an inmate suggested otherwise. (Doc. 12-1, p. 110.) Respondent points out that Gholson received sixteen (16) disciplinary infractions for offenses including assault, disorderly conduct, and participating in a riot

Whether this Court can review the BOP's *nunc pro tunc* denial appears to be an open question. Compare <u>Dupree v. Warden-FCI Miami</u>, No. 13-24413-CIV, 2014 WL 11456077, at *8 (S.D. Fla. Sept. 9, 2014) ("Petitioner has failed to allege any facts that would support a conclusion that the BOP abused its discretion in determining that a *nunc pro tunc* designation to the Georgia State facility would not be appropriate in Petitioner's case. Regardless, even assuming that he had, Petitioner's claim would be foreclosed by the plain language of 18 U.S.C. § 3625. . . . Federal courts thus lack jurisdiction to review BOP individualized determinations made pursuant to § 3621 and, as such, the BOP's substantive determination to deny Petitioner retroactive designation is not subject to judicial review in this case."); and <u>Paradis</u>, 2011 WL 2790480, at *4 ("[I]t appears that a *nunc pro tunc* designation under § 3621 (which includes a determination under § 3585 of the effective date that the federal sentence will begin) is subject to review for abuse of discretion."). The Court need not resolve this question in this case. Even if the Court has authority to review the BOP's denial of Gholson's request for a *nunc pro tunc* designation, Gholson has failed to show that the BOP committed any error, much less abused its discretion, in denying his request. As laid out above, the BOP properly assessed Gholson's request under the applicable statutes and policies, including Program Statement 5160.05. Gholson's arguments only show disagreement with the result of the BOP's assessment and fail to demonstrate any error or abuse of discretion in the BOP's decision making process.

Gholson is not entitled to his requested relief as to *nunc pro tunc* designation. Thus, should the Court reach the merits of Gholson's arguments, it should **DENY** this portion of his Petition.

---

while incarcerated in the Florida Department of Corrections, and he was twice convicted of battery of a law enforcement officer for assaulting a correctional officer. (Doc. 12, p. 11.)

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Gholson leave to appeal *in forma pauperis*.  Though Gholson has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Gholson's Petition and the related pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons and the manner set forth above, I **RECOMMEND** that the Court **DISMISS without prejudice** Gholson's Petition for Writ of Habeas Corpus and **DISMISS as moot** all pending Motions.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to

**CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Gholson leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Gholson and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA